THE STATE OF OHIO, APPELLANT, *v.* GREEN, APPELLEE.

[Cite as State *v.* Green (1991), 58 Ohio St. 3d 239.]

(No. 90-121—Submitted January 8, 1991—Decided April 3, 1991.)

*John H. Roszmann,* prosecuting attorney, for appellant.

*Jerry Weiner Legal Services Co., L.P.A., Jerry Weiner* and *Donald R. Shartzer,* for appellee.

HOLMES, J. The single issue presented for our review is the propriety of indicting and convicting defendant Thurman Green for felonious assault on the facts alleged in the indictment and proven at trial.

In the state's sole proposition of law, it alleges that the act of pointing a cocked, loaded and functional firearm at another coupled with a verbal threat expressed at the same instant, is sufficient evidence to establish the elements of "felonious assault" as defined by R.C. 2903.11(A)(2). Under the facts of this case, we agree.

The elements of felonious assault are set forth in R.C. 2903.11, which provides in pertinent part:

"(A) No person shall knowingly:
"* * *

"(2) Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.

"(B) * * * If the victim of the offense is a peace officer, as defined in section 2935.01 of the Revised Code, felonious assault is an aggravated felony of the first degree."

"Knowingly," for purposes of R.C. 2903.11, is defined in R.C. 2901.22(B) as:

"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

And, "attempt" for purposes of R.C. 2903.11 is defined in R.C. 2923.02(A) as follows:

"No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct which, if successful, would constitute or result in the offense."

In *State* v. *Woods* (1976), 48 Ohio St. 2d 127, 2 O.O. 3d 289, 357 N.E. 2d 1059, paragraph one of the syllabus, this court explained that a person is guilty of criminal attempt where he or she "* * * purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. To constitute a substantial step, the conduct must be strongly corroborative of the

actor's criminal purpose. (R.C. 2923.02[A] construed.)"[1]

In *State* v. *Brooks* (1989), 44 Ohio St. 3d 185, 542 N.E. 2d 636, we were confronted with a case similar to the one at bar concerning the propriety of a felonious assault charge. In *Brooks,* the defendant was involved in a "heated conversation" with a barmaid which resulted in the defendant pointing a handgun at the woman's face and stating, "Bitch, I will kill you." *Id.* at 187, 542 N.E. 2d at 638. We upheld Brooks' felonious assault conviction based upon the totality of the circumstances; however, we went on to say that, "[t]he act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient to convict a defendant of the offense of 'felonious assault' * * *." *Id.* at syllabus.

It can be readily gleaned from our holding in *Brooks, supra,* that the additional evidence needed to uphold a felonious assault charge could include verbal threats as perceived by a reasonable person under the circumstances. Thus, the act of pointing a deadly weapon at another coupled with a threat, which indicates an intention to use such weapon, is sufficient evidence to convict a defendant of the offense of "felonious assault" as defined by R.C. 2903.11(A)(2).

In the case *sub judice,* defendant held a rifle aimed at Mongold's head. The rifle was *loaded,* the hammer was *cocked,* and the weapon was subsequently determined to be a fully func-

---

[1] Comment 6(a) to Section 5.01 of the Model Penal Code explains the requirements of "substantial step" and corroboration of the actor's criminal purpose:

"(a) * * * Whether a particular act is a substantial step is obviously a matter of degree. To this extent, the Code retains the element of imprecision found in most of the other approaches to the preparation-attempt problem. There are, however, several differences to be noted:

" *'First, this formulation shifts the emphasis from what remains to be done, the chief concern of the proximity tests, to what the actor has already done.* That further major steps must be taken before the crime can be completed does not preclude a finding that the steps already undertaken are substantial. It is expected, in the normal case, that this approach will broaden the scope of attempt liability.

"Second, although it is intended that the requirement of a substantial step will result in the imposition of attempt liability only in those instances in which some firmness of criminal purpose is shown, no finding is required as to whether the actor would probably have desisted prior to completing the crime. Potentially the probable desistance test could reach very early steps toward crime, depending on how one assesses the probabilities of desistance; but since in practice this test follows closely the proximity approaches, rejection of a test of probable desistance will not narrow the scope of attempt liability.

"Finally, the requirement of proving a substantial step generally will prove less of a hurdle for the prosecution than the res ipsa loquitur approach, which requires that the actor's conduct itself have manifested the criminal purpose. The basic rationale of the requirement that the actor's conduct shall strongly corroborate his purpose to commit a crime is, of course, the same as that underlying the res ipsa loquitur view. But framed in terms of corroboration, the present formulation does not so narrowly circumscribe the scope of attempt liability. Rigorously applied, the res ipsa loquitur doctrine would provide immunity in many instances in which the actor had gone far toward the commission of an offense and had strongly indicated a criminal purpose. * * *" (Emphasis added.) A.L.I. Model Penal Code and Commentaries, Part I (1985) 329-330.

tional firearm. Moreover, at the instant defendant positioned his weapon in the direction of the officers, he shouted, "If you don't have a warrant get the fuck out of my house." Clearly, under these circumstances a reasonable jury, properly instructed, could have concluded that defendant's actions were strongly corroborative of his intent to cause physical harm to the officers by means of his deadly weapon.[2] See *State* v. *Brooks, supra,* at 192, 542 N.E. 2d at 643. Therefore, we determine the court of appeals erred in finding that the evidence was legally insufficient to support the conviction of defendant for the offense of felonious assault with a firearm specification.

Accordingly, for the foregoing reasons, the court of appeals' decision is reversed and defendant's conviction is reinstated, with the cause remanded to the trial court for imposition of sentence.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., DOUGLAS, WRIGHT and RESNICK, JJ., concur.

SWEENEY and H. BROWN, JJ., dissent.

---

[2] Defendant suggests that the only conviction that the evidence could support in this case is aggravated menacing, in violation of R.C. 2903.21(A), which reads as follows:

"No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of such other person or member of his immediate family."

We disagree, because the defendant, in making his threat along with his actions, took a substantial step in a course of conduct apparently planned to culminate in the commission of a crime.