[Cite as *State v. Shepherd*, 2016-Ohio-1119.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 102974

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JORDAN SHEPHERD

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-589846-A

**BEFORE:** Stewart, P.J., S. Gallagher, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** March 17, 2016

**ATTORNEY FOR APPELLANT**

Susan J. Moran
55 Public Square, Suite 1616
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

Andrew Rogalski
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

MELODY J. STEWART, P.J.:

{¶1} Defendant-appellant Jordan Shepherd appeals his convictions of felonious assault and having a weapon while under disability. On appeal, he challenges the sufficiency and weight of the evidence at trial. For reasons set forth below, we affirm.

{¶2} The Cuyahoga County Grand Jury returned an indictment charging Shepherd, and his codefendant brother, Andraoss Shepherd, with four counts of aggravated robbery, two counts of felonious assault, and two counts of kidnaping. All charges carried one- and three-year firearm specifications. Shepherd was also charged with having a weapon while under disability.

{¶3} The defendants were tried together to a jury on all counts except the weapon disability charge, which Shepherd elected to have tried to the judge. The following evidence was presented at trial.

{¶4} On May 20, 2014, Shepherd and his brother waited outside Live Clothing, L.L.C., a local urban fashion clothing store, for the store to open. Video surveillance footage taken outside the store shows Shepherd and the brother shielding their faces from the camera as they approached the store. The proprietor of the store and his sales associate were working that morning. The proprietor recognized the brother as having shopped at the store before, while the sales associate remembered that Shepherd had shopped at the store in the past as well.

{¶5} The brothers spent 30 to 45 minutes shopping before the store owner became suspicious that they might be planning to rob the store because the two were selecting only the stores' most expensive items. The owner testified that the total cost of the items selected was between $1,500 and $2,000. According to the owner, a sale this large would be extremely rare

for the non-holiday season, not to mention a Tuesday morning. The owner thought that perhaps the two were planning to use a stolen credit card, so he told them that they would have to show some identification if they were going to charge the items. The brothers responded by stating that they would go get cash from an ATM and left the store. According to the owner and the sales associate, the brothers returned to the store promptly — having been gone no longer than two to three minutes. The owner testified that he did not believe the brothers could have successfully gone to an ATM and completed a transaction within that time.

{¶6} When the brothers returned to the store the owner noticed that Shepherd's brother was carrying what appeared to be a gun in his waist pocket. The owner told the brother that he could not be in the store with a gun, and asked the two men to leave. Although the brother denied having a weapon, the owner persisted in asking them to leave the store and began to escort them out when the brother turned, pulled a gun from his waist, pointed it at the owner and exclaimed "you know what this is." The owner and the brother fought over the weapon while the sales associate retrieved his gun from behind the checkout counter and aimed it at the brothers.

{¶7} Seeing the gun, Shepherd "fell back" and pleaded with the sales associate not to shoot him. Shepherd eventually ran out of the store. Immediately thereafter, the brother freed himself and his weapon and also ran out of the store. The sales associate pursued the men. Shots were fired and the sales associate fired back believing that the brother was firing in his direction.

{¶8} The jury found Shepherd guilty, on a complicity theory of accomplice liability, of a single count of felonious assault (for the assault against the owner of the store). The jury acquitted Shepherd of the firearm specifications attached to that charge, as well as all other

charges and their respective firearm specifications. The court found Shepherd guilty of having a weapon while under disability and sentenced him to six years in prison on the felonious assault violation in addition to a 36-month concurrent prison term on the weapon disability charge.

{¶9} A challenge to the sufficiency of the evidence is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Under this test, the ultimate question is whether the state met the burden of presenting legally adequate evidence on each element of the charges for which Shepherd was convicted. *Id.* Conversely, when reviewing a judgment on the grounds that the verdicts are against the manifest weight of the evidence, the court is charged with reviewing the record, weighing the evidence and credibility of the witnesses, and ultimately determining whether the jury so "clearly lost its way" and "created such a manifest miscarriage of justice that [the] conviction[s] must be reversed and a new trial ordered." *Id.*

{¶10} Felonious assault, pursuant to R.C. 2903.11(A)(2), is defined as:

(A)  No person shall knowingly do either of the following:

(2) Cause or attempt to cause physical harm to another or to another's unborn by

means of a deadly weapon or dangerous ordnance.

Shepherd contends that the state failed to meet its burden of producing sufficient evidence of a threat of physical harm beyond that of his codefendant simply pointing his weapon at the store owner.

{¶11} To support a conviction for felonious assault under R.C. 2903.11(A)(2), it is not necessary for the state to show that a defendant discharged his weapon in the course of committing the offense, rather, the state can prove the element of attempt by showing that the defendant pointed his weapon at a victim while manifesting his intent to use the weapon. *See*

*State v. Brooks*, 44 Ohio St.3d 185, 192, 542 N.E.2d 636 (1989). In *Brooks*, the Ohio Supreme Court reinstated a felonious assault conviction when it found that the defendant had manifested a sufficient intent to use his weapon when he refused to leave a bar, pointed his gun at a barmaid, and told her that he was going to kill her. *Id.* The court concluded that while "the act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient to convict a defendant of the offense of 'felonious assault' * * *," the jury could have found, based on the totality of the circumstances, that the defendant took a substantial step in the commission of the felonious assault. *Id.* Two years later, the court reviewed the *Brooks* decision in *State v. Green*, 58 Ohio St.3d 239, 569 N.E.2d 1038 (1991), and stated:

> It can be readily gleaned from our holding in *Brooks* * * * that the additional evidence needed to uphold a felonious assault charge could include verbal threats as perceived by a reasonable person under the circumstances. *Id.* at 241. Therefore, the act of pointing a deadly weapon at another, coupled with a threat, indicates an intention to use such weapon, and is sufficient evidence to convict a defendant of the offense of "felonious assault" as defined by R.C. 2903.11(A)(2).

*Id.* at 241. This court has followed the rule of law articulated in *Brooks* and *Green*, and has held that evidence establishing that the defendant pointed his weapon at the victim coupled with a threat to use the weapon, is sufficient to support a felonious assault conviction. *State v. White*, 8th Dist. Cuyahoga No. 101576, 2015-Ohio-2387, ¶ 28; *State v. Burns*, 8th Dist. Cuyahoga No. 99782, 2014-Ohio-303, ¶ 20; *State v. Thompson*, 8th Dist. Cuyahoga No. 99426, 2013-Ohio-4793, ¶ 13-16.

{¶12} According to the store owner's testimony, Shepherd's brother not only pointed his gun at the owner but also said to him "you know what this is." Although the store owner

testified that he believed this statement meant that the brothers were robbing him, the test for whether a given threat manifests an intention to use the weapon is not a subjective one. Rather, the question becomes whether a reasonable person would believe that the threat shows an intent to use the gun. *See Brooks* at 231. Here, the jury could decide whether the statement was a threat that manifested an intent to use the weapon. Therefore, the state met its burden of producing sufficient evidence at trial to support the felonious assault.

{¶13} Shepherd further agues that the state failed to establish that the actions of his codefendant were attributable to him based on the complicity theory of accomplice liability because it failed to present sufficient evidence that he aided and abetted his brother in committing the felonious assault.

> To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime.

*State v. Sutton*, 8th Dist. Cuyahoga Nos. 102300 and 102302, 2015-Ohio-4074, ¶ 33, quoting *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus.

{¶14} Shepherd asserts that it was his brother's independent actions and intent that formed the basis for the felonious assault and that he did nothing to encourage or assist his brother in committing the crime. Shepherd points out that when his brother drew his weapon he did not become involved.

{¶15} While we agree that there was no direct evidence of Shepherd's involvement in the felonious assault, we believe that the record is replete with circumstantial evidence that shows

that the brothers were acting in concert until the store employees retaliated. To begin, Shepherd and his brother entered the store together, shopped together, left the store together to supposedly go to an ATM for cash, and promptly returned together without being gone long enough to secure a cash withdrawal. Thus, the brothers were by each other's side until the sales associate pulled out his weapon and Shepherd fled. Moreover, the store owner testified that he did not notice Shepherd's brother carrying a gun in his pocket when the two men initially arrived at the store, but distinctly noticed the gun once they returned to the store after leaving to get cash. This fact lends credence to the state's theory that the brothers may have retrieved the weapon or repositioned it when they left the store to allegedly go to the ATM. Lastly, the sales associate testified that he felt like the brothers were behaving suspiciously by using nonverbal communication and whispering while they were shopping.

{¶16} Perhaps what is most important is what is missing from the evidence — that is, any indication that Shepherd withdrew himself from his brother's actions when it was clear that his brother had a gun. When the brother drew his weapon, Shepherd did not act surprised or ask the brother what he was doing, nor did Shepherd tell him to put the gun away or assist the owner in any way. These missing facts support the state's theory that Shepherd was aware of the weapon and his brother's intent to use it. Further, Shepherd's reaction during the confrontation (when he "fell back" and asked the sales associate not to shoot him) does not indicate that he played no role in the events. At most, Shepherd's response showed an act of self-preservation: once the sales associate drew his gun on the men, Shepherd was willing to surrender himself rather than risk being shot. Accordingly, we find that evidence presented by the state supports Shepherd's conviction for felonious assault.

**{¶17}** We also find that the state presented sufficient evidence of the weapon while under disability charge. This court has previously held that a defendant can be convicted of having a weapon while under disability without holding the firearm if that person was an accomplice who aided and abetted the person who actually possessed and brandished the weapon. *State v. Adams*, 8th Dist. Cuyahoga No. 93513, 2010-Ohio-4478; *State v. Lewis*, 8th Dist. Cuyahoga No. 81957, 2003-Ohio-3673. As discussed above, the state presented ample evidence that established that Shepherd aided and abetted his brother in the commission of the felonious assault, therefore, the state met its burden of production on the weapons disability charge.

**{¶18}** Lastly, we cannot conclude that Shepherd's convictions were against the manifest weight of the evidence. In this case, the defense called no witnesses. Shepherd does not attempt to undermine the credibility of the testifying witnesses, but simply maintains that the evidence more plausibly shows that he was innocently shopping with his brother when, unbeknownst to him, his brother pulled out a weapon. We do not find that the manifest weight of the evidence supports Shepherd's contention.

**{¶19}** Judgment affirmed.

It is ordered that appellee recover of said appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MELODY J. STEWART, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
ANITA LASTER MAYS, J., CONCUR