[Cite as *State v. Green*, 2021-Ohio-3260.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2020 CA 00178 |
| | : | |
| DION DAIZHON GREEN | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Stark County Court of
                                 Common Pleas, Case No. 2020 CR
                                 1612

JUDGMENT:                        AFFIRMED

DATE OF JUDGMENT ENTRY:          September 16, 2021

APPEARANCES:

For Plaintiff-Appellee:                     For Defendant-Appellant:

KYLE L. STONE                               D. COLEMAN BOND
STARK COUNTY PROSECUTOR                     116 Cleveland Ave. NW
                                            Suite 600
VICKI L. DESANTIS                           Canton, OH 44702
ASST. PROSECUTING ATTORNEY
110 Central Plaza South, Suite 510
Canton, OH 44702-1413

*Delaney, J.*

{¶1} Defendant-Appellant Dion Daizhon Green appeals his conviction and sentence by the Stark County Court of Common Pleas for one count of domestic violence, a first-degree misdemeanor in violation of R.C. 2919.25(A)(D)(2). Plaintiff-Appellee is the State of Ohio.

## FACTS AND PROCEDURAL HISTORY

### Indictment

{¶2} On October 19, 2020, the Stark County Grand Jury indicted Defendant-Appellant Dion Daizhon Green on one count of felonious assault, a second-degree felony in violation of R.C. 2903.11(A)(2)(D)(1)(a); one count of violating a protection order, a third-degree felony in violation of R.C. 2919.27(A)(1)(B)(4); and one count of domestic violence, a first-degree misdemeanor in violation of R.C. 2919.25(A)(D)(2). Green entered a plea of not guilty to the charges.

{¶3} Prior to trial, the State dismissed Count Two of the indictment, violating a protection order. The matter proceeded to a jury trial on November 16, 2020. The following evidence was adduced at trial.

### The Witness

{¶4} On July 12, 2020 at approximately 9:00 p.m., A.C. was driving south on Cleveland Avenue in Canton, Ohio, when he looked to his left and saw "a guy just pounding a girl, punching her." (T. 159-160). He saw the man was holding the woman by her hair and punching her in the head. (T. 167). A.C. pulled his car into a parking lot and jumped out of the car. As he walked towards the man and woman, the man got into a car and pulled away. (T. 162). A.C. asked the woman if she was okay and he described her

as hysterical and crying. (T. 162). A.C. walked back to his car to get his cell phone when he saw the man come back down the road, pull into the parking lot at 15-20 mph, and to A.C.'s disbelief, hit the woman with the car. (T. 162-163). The woman had tried to move out of the way of the car, but it sideswiped her, causing her to hit the ground and her purse to fly into the air. (T. 165). From A.C.'s vantage point, it appeared the man intentionally hit the woman with the driver's front side of the car. (T. 164, 165). A.C. ran to the woman where she was laying on the ground. (T. 163). The man drove back into the parking lot and came towards them again when A.C. heard the man ask the woman to get into the car, but the man then exited the parking lot and drove away. (T. 170). A.C. got his cell phone and called 911. (T. 164). The 911 call was played at trial and A.C. identified his voice as the caller. (T. 169). The police and an ambulance responded to the scene.

{¶5} A.C. described the car that he saw hit the woman as a "smaller white car." (T. 166). He did not get a good look at the driver of the car, but described the man as a skinny, young black male. (T. 166).

**The Victim**

{¶6} On July 12, 2020, Green picked C.B. up from work in his car with their two-year old child in the backseat. C.B. and Green had known each other for a decade, were in a relationship, and were the parents of the child. (T. 175-176). When C.B. got into the car, C.B. said that Green slapped her and threatened to kill her. (T. 177). Green pulled the car into a parking lot by a car wash when C.B. got out of the car, but Green pulled the back of her pants. (T. 177) She pushed him and ran away and Green then hit her in the back of her head, after which she walked away from him. Green then punched her in the

head multiple times. (T. 177). She was walking away from Green when he hit her with the front driver's side of his car. (T. 178, 180). When she was hit with the car, she flew into the air, but not really high, and fell on the ground. (T. 181). After she was hit the first time, she saw Green drive the car back into the parking lot where she believed he was going to hit her again, but he drove away. (T. 181).

{¶7} C.B. testified she suffered injuries on her side and right arm. (T. 181-182). She declined care by the paramedics and went for medical treatment the next day but did not get a diagnosis. (T. 182). She took off three days of work because of the pain from her injuries. (T. 182).

{¶8} After the incident, C.B. testified that Green sent her a letter on September 25th. (T. 184). The letter was introduced as an exhibit where C.B. testified that she recognized the handwriting in the letter as Green's handwriting. (T. 184). The letter was displayed for the jury and C.B. read the letter aloud:

> I miss you, sorry 4 reacting out of emotion!! You kno I love you girl on the real. To my beautiful son's mother. * * * Forgive me beautiful I love you and miss you so much on the real. I f'g love you [C.B.] and I'm going – I'm doing way better now. I've been sober for like 3 months now!!! And I hope and pray that you can find it in ya lil beautiful pure heart to forgive me. I'm bein punished enough.

(T. 184-185).

### The Police Report

{¶9} On July 12, 2020, Officer George Grubisic with the City of Canton Police Department reported to an incident on Cleveland Avenue based on a call to dispatch

about a man striking a woman with his vehicle. When he arrived on the scene, he saw two witnesses and C.B. being treated by the paramedics. Officer Grubisic spoke with C.B. and she told him she was in pain. (T. 195). He did not take any pictures of C.B.'s injuries. (T. 203).

{¶10} The witness and C.B. both told Officer Grubisic that Green intentionally stuck C.B. with his vehicle. (T. 200). One of the witnesses had taken a short video of the man's vehicle leaving the scene. (T. 195). The vehicle was identified as a Chevy Sonic. (T. 195). Using the information from C.B. about the incident, Officer Grubisic checked the LEADS system and determined that a Chevy Sonic was registered to Green. (T. 197).

**Conviction and Sentence**

{¶11} After the State rested, Green moved for dismissal pursuant to Crim.R. 29. The trial court denied the motion. Green rested without presenting evidence and renewed his Crim.R. 29 motion. The trial court denied the motion.

{¶12} After deliberation, the jury returned a verdict finding Green not guilty of Count One, felonious assault and guilty of Count Three, domestic violence.

{¶13} The trial court held a sentencing hearing on November 20, 2020. Via sentencing entry filed on November 30, 2020, Green was sentenced to 170 days of local incarceration at the Stark County Jail and granted 88 days of jail time credit.

{¶14} It is from this judgment that Green now appeals.

## ASSIGNMENTS OF ERROR

{¶15} Green raises two Assignments of Error:

{¶16} "I. APPELLANT ASSERTS THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST THE APPELLANT, AND THE CONVICTION MUST BE REVERSED.

{¶17} "II. APPELLANT ASSERTS HIS CONVICTION WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED."

## ANALYSIS

{¶18} Green's two Assignments of Errors are related and will be considered together. Green argues his conviction for domestic violence is not supported by the sufficiency of the evidence and is against the manifest weight of the evidence because there was no evidence of physical harm. We disagree.

{¶19} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

{¶20} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

### Inconsistent Verdicts

{¶21} In the instant case, Green was convicted of domestic violence pursuant to R.C. 2919.25(A), which states, "No person shall knowingly cause or attempt to cause physical harm to a family or household member." The jury acquitted Green of felonious assault, which states, "No person shall knowingly do either of the following: * * * (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A)(2). Green contends the domestic violence conviction is against the sufficiency and weight of the evidence because it is inconsistent with the acquittal on the felonious assault count. He specifically argues that it is inconsistent that the jury found Green did not cause knowingly cause or attempt to cause physical harm by means of deadly weapon but found that Green knowingly caused or attempted to cause physical harm to a family member.

{¶22} This Court has previously addressed seemingly inconsistent verdicts. We have cited the Ohio Supreme Court's decision in *State v. Lovejoy*, 79 Ohio St.3d 440, 683 N.E.2d 1112 (1997) at paragraph one of the syllabus, holding that "several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." *State v. Kelley*, 5th Dist. Delaware No. 2006CA00371, 2007-Ohio-6517, ¶ 24 [inconsistent responses to different counts do not create an inconsistency in the verdicts]. The jury may well have compromised in its decision. "An inconsistent verdict may very well be a result of leniency and compromise

by the jurors, rather than being caused by jury confusion." *State v. Fraley*, 5th Dist. Perry No. 03CA12, 2004-Ohio-4898, ¶ 15, citing *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). *See also, State v. Nesbitt*, 5th Dist. Stark No. 2017CA00234, 2018-Ohio-4222, ¶ 31; *State v. Carson*, 5th Dist. Licking No. 18-CA-25, 2018-Ohio-5305, ¶ 45.

{¶23} The "contradictory" jury verdicts in the instant case do not affect the validity of Green's conviction for domestic violence. In *City of Brecksville v. Malone*, 8th Dist. Cuyahoga No. 75466, 2000 WL 193232, *1 (Feb. 17, 2000), appeal not allowed, 89 Ohio St.3d 1451, 731 N.E.2d 1139 (2000), the Eighth District Court of Appeals summarized Ohio's approach to inconsistent verdicts:

It is well settled that the validity of a conviction does not depend on consistency between verdicts on various counts of a multiple count indictment when a jury finds the defendant guilty of one or more offenses and not guilty on others even though the difference in the verdicts cannot rationally be reconciled. *United States v. Powell*, [469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) ]; *Dunn v. United States*, [284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932) ]; *Browning v. State*, [120 Ohio St. 62, 165 N.E. 566 (1929) ] (inconsistency does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count). In declining to vacate seemingly inconsistent verdicts, the Ohio Supreme Court reasoned that the defendant received the benefit of the jury's mistake, compromise or lenity with regard to the acquittal, and

it is not unreasonable for the defendant to accept the burden of the jury's conviction. *Id.*

{¶24} We therefore decline in this case to vacate Green's domestic violence conviction simply because the jury acquitted him of felonious assault. *Carson, supra*, 2018-Ohio-5305 at ¶ 47 citing *Nesbitt, supra*, 2018-Ohio-4222 at ¶ 33, citing *State v. King*, 5th Dist. Guernsey No. 09 CA 000019, 2010-Ohio-2402, ¶ 34 [inconsistent verdicts do not render conviction against manifest weight of evidence]; *State v. Norman*, 10th Dist. Franklin No. 10AP-680, 2011-Ohio-2870, ¶ 14 [defendant convicted of domestic violence but acquitted of assault, but inconsistency does not warrant reversal of conviction]; *State v. Burnett*, 5th Dist. Stark No. 2016CA00007, 2016-Ohio-7502, ¶ 18, motion for delayed appeal denied, 148 Ohio St.3d 1441, 2017-Ohio-1427, 72 N.E.3d 656, citing *State v. Gardner*, 118 Ohio St.3d 420, 2008–Ohio–2787 [verdict convicting defendant of one crime but acquitting him of another may not be disturbed merely because the two findings are irreconcilable]; *see also, State v. Wofford*, 5th Dist. Stark No. 2013CA00186, 2014-Ohio-3122, ¶ 50, appeal not allowed, 141 Ohio St.3d 1474, 2015-Ohio-554, 25 N.E.3d 1080. As discussed below, the jury's verdict for domestic violence is supported by the sufficiency and manifest weight of the evidence.

## Physical Harm

{¶25} Green contends there was insufficient evidence as to physical harm to support the verdict for domestic violence. He bases his argument on the fact that the jury found he did not knowingly cause or attempt to cause physical harm to C.B. with a deadly weapon or dangerous ordnance so a verdict finding physical harm against a family member should likewise be unsupported by the evidence. He argues the State did not

produce direct evidence of physical harm to C.B. such as photographs of her injuries or a medical diagnosis of her injuries.

{¶26} We find the evidence in this case supports a verdict for domestic violence. While Green was charged with felonious assault, which required the jury to determine that Green knowingly caused or attempted to cause physical harm to C.B. by means of a deadly weapon or dangerous ordnance (to-wit: a motor vehicle), the jury found the facts did not meet the elements of felonious assault as charged. The elements of the charge of domestic violence, however, are different from that of the charge of felonious assault in this case. The State was required to prove beyond a reasonable doubt that Green caused or attempted to cause physical harm to C.B. without consideration of a deadly weapon or dangerous ordnance.

{¶27} C.B. testified that before Green allegedly hit her with his car, he punched her in the head multiple times. A.C. testified that he witnessed the man driving the smaller white car, later identified as Green, holding C.B. by the hair and punching her in the head to such an extent that A.C. was compelled to stop his car to intervene. When A.C. reached C.B., she was hysterical and crying. Officer Grubisic testified the reports made by C.B. and A.C. at the time of the incident were consistent that Green punched C.B. before he allegedly hit her with his car. After the incident, Green sent a letter to C.B., asking her to forgive him because he reacted out of emotion. The jury in this case found the testimony of C.B. and A.C. to be credible that Green knowingly caused or attempted to cause physical harm to C.B. by holding her by the hair and punching her multiple times in the head, which is separate act from the incident with Green's car.

{¶28} Viewing the evidence in a light most favorable to the State, the State met its burden of production so that a reasonable person could find beyond a reasonable doubt that Green caused or attempted to cause physical harm to C.B. Further, the jury did not lose its way to create a manifest miscarriage of justice when it found Green guilty of domestic violence. This is not the exceptional case in which the evidence weighs heavily against the conviction.

{¶29} Green's first and second Assignments of Error are overruled.

## CONCLUSION

{¶30} The judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, J.,

Hoffman, P.J. and

Wise, John, J., concur.